UNITED STATES v. HAVILAND & CO.

(Circuit Court of Appeals, Second Circuit. January 11, 1910.)

No. 59 (5,034).

1. CUSTOMS DUTIES (§ 85*)—REAPPRAISEMENT—VOIDABILITY.

Where, in making a reappraisement of imported merchandise, a Board of General Appraisers acts outside of or contrary to law, or proceeds upon a wrong principle or without any evidence to sustain their findings, their decision may be set aside.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 201–206; Dec. Dig. § 85.*]

2. CUSTOMS DUTIES (§ 85*)—WANT OF LEGAL EVIDENCE.

A reappraisement decision by a Board of General Appraisers was founded on indirect evidence, the result reached being based upon portions of the evidence read apart from the context, upon unwarranted deductions, and assumptions unsupported by the proof, and upon arbitrary

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

deductions to equalize certain conditions peculiar to the case, and many of the propositions urged in support of the conclusions made were based upon conjecture and guesswork. *Held,* that this was not such proof as is contemplated by the statute, and that, there being no legal evidence to justify the reappraisement, it should be set aside.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 201–206; Dec. Dig. § 85.*]

3. CUSTOMS DUTIES (§ 80*)—PRINCIPAL MARKET.

The evidence in a reappraisement case, relative to china exported from Limoges, was to the effect that 80 per cent. of the entire output of the factory was exported directly to the United States, and that there was no open market for such china at Limoges; but it showed the values established at Paris, where the remaining 20 per cent. of the Limoges output was disposed of. This latter value, however, was affected somewhat by the fact that the Paris house sold at both wholesale and retail, and that the goods handled there differed materially from those sold at Limoges for export to the United States. *Held,* that there was no evidence that Paris was the principal market for the china thus exported.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. § 196; Dec. Dig. § 80.*]

Appeal from the Circuit Court of the United States for the Southern District of New York.

Writ of certiorari denied by Supreme Court.

For decision below, see 167 Fed. 414, affirming a decision by Board 3, United States General Appraisers (G. A. 6,655, T. D. 28,‑382), which had reversed the assessment of duty by the collector of customs at the port of New York. Said assessment was based on a reappraisement by Board 2 of the General Appraisers, which had re‑versed the reappraisement made by a single General Appraiser.

The merchandise in question was imported from France by Haviland & Co. The local appraiser advanced the entered value, the importers appealed under section 13 of the act of June 10, 1890, and the General Appraiser who heard the appeal found the entered value to be correct. The government thereupon appealed to a Board of three General Appraisers, known as Board 2, who advanced the merchandise 26.5 per cent. above the invoice value.

The collector assessed duty at the rate of 60 per cent. upon the value as thus fixed and the importers appealed to Board 3, which sustained their protest. This Board held that there was no legal evidence to justify the reappraisement as found by Board 2, and directed the collector to reliquidate the entry accordingly. On appeal the Circuit Court affirmed the decision of Board 3, and the government appeals to this court. The opinion of Judge Martin in the Circuit Court is reported in 167 Fed. 414 (T. D. 29,523).

D. Frank Lloyd, Deputy Asst. Atty. Gen., for the United States.

B. A. Levett (Henry F. Wolff, on the brief), for the importers.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge (after stating the facts as above). The questions in controversy have been discussed in four opinions, in which the opposing arguments have been fully and ably presented. In three of these opinions—those written by General Appraiser Waite, by Board 3, and by Judge Martin—the contention of the importers has been sustained. The facts have been so fully presented that it will not be necessary to restate them in detail.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The question here to be considered is whether Board 2, in over-ruling General Appraiser Waite and advancing the value of the merchandise 26.5 per cent. above invoice value, transcended the powers conferred by the statute or proceeded upon a wrong principle contrary to law. If Board 2 acted outside of or contrary to law or proceeded upon a wrong principle or without any evidence to sustain their finding, they exceeded their power, and the decisions of Board 3 and the Circuit Court should be sustained. As both parties are apparently agreed upon this proposition, it is unnecessary to elaborate it.

Board 2 bases its conclusion upon a letter written by Charles Edward Haviland, the head of Haviland & Co., to Ralph W. Clayton, a special agent of the Treasury, in 1906, in which he gives a frank and compendious statement of the expenses and profits of the Paris branch of the business, in order that a comparison might be instituted between the prices at which the Limoges branch sells in Europe and the prices at which they sell to the New York branch.

It must be conceded that there is no direct proof in this letter establishing the actual market value of the merchandise as bought and sold in usual wholesale quantities in Paris. By reading portions of the letter apart from the context, by deductions scarcely warranted by the writer's language, by assumptions unsupported by the proof and by arbitrary reductions to equalize the expenses between the wholesale and retail prices at Paris, the result is reached that 16.5 per cent. should be added to make market value. There is no proof such as is contemplated by the statute, many of the propositions urged in support of the conclusions of Board 2 being based upon conjecture and guesswork. The letter shows that the Paris house is a comparatively unimportant branch of the entire business, 80 per cent. of the output being exported to the United States. In 1905 the expenses of the Paris house were $33,000 and the sales about $127,000; the percentage of expense for total sales was 25.5 per cent. It dealt in Haviland & Co.'s goods, but also handled the goods of other manufacturers of china. The character of the decorations and the number of pieces in the sets sold at Paris differed materially from the china sent to this country.

Mr. Haviland says:

All the richer decorations sold by H. & Co., Paris, are in every respect so entirely different from those ordered by H. & Co., New York, that no comparison between them can be made.

Thirty-five invoices of actual sales at wholesale by the Paris house in 1905–6 were submitted, which show that, after deducting expenses:

The net amount received by H. & Co., Paris, from its buyers after deduction of its Paris expenses is frs. 13,872.94c., while the net amount received by H. & Co., Limoges, from H. & Co. New York for the same would be frs. 15,-764.33c.—and this although H. & Co., New York, buy two millions of francs annually and pay cash, while most of the customers of H. & Co. Paris order but a few hundred francs annually.

Commenting upon this statement, Board 3 says:

The 35 invoices in question and the statement in the letter relative thereto furnish the only evidence which the letter contains of the price at which

Haviland's china is sold at wholesale in the city of Paris. This evidence of sales in wholesale quantities shows that the Paris wholesale price was 15.5 per cent. above the Limoges prices. The aggregate price of the merchandise stated in the various invoices under reappraisement by Board 2 averaged 16.5 per cent. above the Limoges price. The merchandise in question was therefore entered at 1 per cent. more than the Paris value of like merchandise as shown by the invoices in question.

If Haviland & Co., of Paris, had been a wholesale house simply, if it had dealt in the same goods assembled in the same sets and decorated in same manner as the exported goods, and if it had appeared that the entered value was less than the price thus established, the letter might have justified the conclusion drawn therefrom; but as none of these propositions is true, the letter is valueless as proof.

The part of the letter relied on by Board 2, which is quoted in both opinions, when read in connection with the other statements does not warrant the construction placed upon it. Even if their construction be adopted it is still incomplete and indeterminate. This is clearly recognized by Board 2 in making the arbitrary reduction of 10 per cent. based upon the fact that the Paris house sold both at retail and wholesale. The other attempts to establish a wholesale market value in Paris resulted in failure so complete that comment is unnecessary.

The opinion of Judge Martin contains a concise statement of the facts and concurs in the opinion of Board 3 in their view of the insufficiency of the Haviland letter as a basis for the conclusions of Board 2. He goes further, however, and concurs with General Appraiser Waite in finding that Limoges is the principal market in France from which china is imported to this country. His argument to establish this proposition is able and seems unanswerable. The testimony shows that if Limoges had been adopted Haviland & Co. would have been treated substantially as the other importers of china from France have been treated. It is, however, sufficient for us to say that we concur with the protest board and the Circuit Court in holding that there was no evidence before Board 2 which warranted the conclusion reached by them and that their action proceeded upon a wrong principle and was contrary to law.

The decision of the Circuit Court is affirmed.